# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES J. TISDALE,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-1849** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **TIM BETTI, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

<u>Pro se</u> Plaintiff James J. Tisdale ("Plaintiff"), who is a pre-trial detainee incarcerated at the Lackawanna County Prison ("LCP") in Scranton, Pennsylvania, has brought the above-captioned action pursuant to 42 U.S.C. § 1983 ("Section 1983"), as well as Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"). (Doc. No. 1 at 6.) Named as Defendants are Warden Tim Betti ("Betti), WellPath, LLC ("WellPath"), the private corporation contracted by LCP to provide medical services to the inmates that are incarcerated therein, and Dr. Haseebuddin Ahmed ("Ahmed"), Dr. Nick Demian ("Demian"), and Satish Mallik ("Mallik"), all of whom render such medical services to the inmates at LCP[1] (collectively, "Defendants"). (Id. at 1, 2-3.) Presently before the Court are the Defendants' motions to dismiss Plaintiff's complaint and/or motions for summary judgment.

---

[1] The Court will refer to all of the defendants as "Defendants," and the Court will specifically refer to Defendants WellPath, Ahmed, Demian, and Mallik as the "Medical Defendants."

(Doc. Nos. 16, 26.)  Those motions, which have been briefed by the parties, are ripe for the Court's disposition.  For the reasons that are set forth below, the Court will grant Defendant Betti's motion, and the Court will grant in part and deny in part the Medical Defendants' motion.

## I.   BACKGROUND

On November 1, 2021, Plaintiff commenced this action against Defendants by filing a complaint pursuant to Section 1983, asserting violations of the Eighth Amendment to the United States Constitution, as well as violations of the ADA. (Doc. No. 1.)  With respect to his ADA claim, Plaintiff asserts that (1) proper modifications were not made to the shower to suit his needs and that (2) proper medication and treatment were not provided for his mental health concerns.  (Id. at 6.)  With respect to his Eighth Amendment claim, Plaintiff asserts that (1) his denture was not fixed and that (2) his dentures were not properly cleaned and glued.  (Id.) In addition to these claims, Plaintiff also asserts that "more rights" have been violated and, in seeming support, he raises allegations concerning issues with his balance and walking.  (Id. at 4, 6.)

In the complaint, Plaintiff sets forth a number of allegations.[2]  Plaintiff alleges that he has had numerous head injuries, which have had an effect on his memory and

---

[2] In accordance with the legal standard set forth below, the Court accepts these allegations as true and draws all reasonable inferences therefrom in the light most favorable to Plaintiff.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).  In

the way he writes.  (Doc. No. 1 at 4.)  Plaintiff also alleges that he is permanently disabled and that he has an "Organic Personality Disorder."  (Id.)

In addition, Plaintiff alleges that he contacted Defendant Demian a number of times about his "denture not fitting[,]" which causes Plaintiff "sores and pain" and makes it difficult for him to eat.  (Id.)  Plaintiff alleges that he asked Defendant Demian if he could fix his dentures, but Defendant Demian replied, "they don't do that here."  (Id.)  As a result, Plaintiff alleges that he is in constant pain and, at times, he does not eat.  (Id.)

Plaintiff also alleges that he saw Defendant Ahmed about issues with his balance and walking.  (Id.)  Defendant Ahmed told Plaintiff that it is most likely a Vitamin D or Vitamin B deficiency, but Plaintiff alleges that Defendant Ahmed did not conduct any tests.  (Id.)  Plaintiff also alleges that, as time went on, it became more difficult for him to do simple things, like walk and carry a tray to his cell.  (Id.)  Plaintiff also alleges that when he gets in stressful situations, walking is more difficult for him, and he believes that it may have something to do with anxiety.  (Id.)

---

addition, the Court heeds the long-standing principle that pro se documents are "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's pro se complaint, "however inartfully pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers[.]"  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In addition, Plaintiff alleges that Defendant Mallik prescribed him medication for his anxiety, "which had no affect [sic] on [his] motor skills." (Id. at 5.)  Plaintiff alleges that, as time went on, his ability to function became even more difficult.  (Id.)  In support, he alleges that it became "almost imposable [sic]" for him to shower. (Id.)  He explains that on his cell block, there are two handicapped cells, but no handicapped shower.[3]  (Id.)  Plaintiff also alleges that he asked Defendant Betti if modifications could be made to the shower, including "a simple rail and a bench[,] and Defendant Betti stated that he would ask Defendant WellPath to see if they would deem it necessary.  (Id.)  Plaintiff alleges that Defendant WellPath, despite knowing Plaintiff's medical history and being familiar with his balance and walking issues, still made no modifications to the shower.  (Id.)  As a result, Plaintiff alleges that he contacted the Department of Justice, Disabilities Rights Section.  (Id.)

As for relief, Plaintiff requests that he be provided with tests so that he can find out what is wrong with his balance and walking and that, if it is serious, he be sent to a specialist.  (Id. at 6.)  He also requests that he have more exercise with walking so that he can "build up better balance."  (Id.)  He finally requests to have his dentures fixed and to be provided with "things" that he can easily chew.  (Id.)

---

[3] Notably, however, Plaintiff's various filings in the summary judgment record seem to suggest that there is, in fact, a handicap shower that Plaintiff can use, but that it is not, allegedly, fully accessible to suit his needs. (Doc. No. 29-2 at 2.)

Along with the complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis.  (Doc. No. 2.)  On November 2, 2021, the Court granted Plaintiff's motion for leave to proceed in forma pauperis, deemed his complaint filed, and directed service of the complaint on Defendants.  (Doc. No. 4.)  Following service, Defendants filed motions to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. Nos. 16, 26.)  More specifically, Defendant Betti filed a motion to dismiss on January 3, 2022 (Doc. No. 16), followed by a brief in support (Doc. No. 22) and, on February 15, 2022, the Medical Defendants filed their motion to dismiss and brief in support (Doc. Nos. 26, 27).

In their respective motions, Defendants raise the issue of whether Plaintiff properly exhausted his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA").  On March 21, 2022, the Court issued a Paladino[4] Order informing the parties that it would consider the issue of exhaustion in the context of summary judgment and that, by doing so, it would review matters outside the pleadings in its role as factfinder.   (Doc. No. 32.)  In that Order, the Court also afforded the parties an opportunity to be further heard on the issue of exhaustion. (Id.)

In accordance with the Court's March 21, 2022 Order, Defendants filed reply briefs along with various exhibits.  (Doc. Nos. 34, 40.)   In addition, Plaintiff filed

---

[4]  See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

affidavits (Doc. Nos. 37, 38), a declaration (Doc. No. 42), and a letter (Doc. No. 43). Thus, Defendants' motions, which have been briefed by the parties, are ripe for the Court's disposition.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  And a claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted).  The court also construes the factual allegations "in the light most favorable to the plaintiff[.]" See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted).  The court, however, is not required to credit "conclusions of law" or to

draw "unreasonable factual inferences."  See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by Twombly and Iqbal.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016).  First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"  See id. (quoting Iqbal, 556 U.S. at 675) (alterations in original).  Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  See id. (quoting Iqbal, 556 U.S. at 679).  And, third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  See id. (quoting Iqbal, 556 U.S. at 679).

### B.    Rule 56

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law."  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986)).  And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]"  See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden at trial[,]" summary judgment is proper. <u>See</u> <u>id.</u> at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]" <u>See</u> <u>Gray</u>, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]" <u>See</u> <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008) (citing <u>Davis v. Mountaire Farms, Inc.</u>, 453 F.3d 554, 556 (3d Cir. 2006)); <u>M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.</u>, 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.  DISCUSSION

### A.    Exhaustion of Available Administrative Remedies

Defendants argue in their motions and supportive briefing that the complaint must be dismissed because Plaintiff failed to exhaust administrative remedies in accordance with the PLRA.  (Doc. Nos. 16, 22, 26, 27, 34, 40, 41.)  Under the PLRA's exhaustion requirement, "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." <u>See</u> 42 U.S.C. § 1997e(a) (emphasis added).

In other words, exhaustion of available administrative remedies is a prerequisite for Plaintiff (a prisoner) bringing suit under Section 1983 and the ADA (a federal law) regarding his prison conditions. <u>See</u> <u>Ross v. Blake</u>, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006))); <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); <u>Booth v. Churner</u>, 532 U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

Thus, in light of these governing principles, the Court must determine whether Plaintiff exhausted available administrative remedies at LCP before commencing suit in this Court.  Defendants acknowledge that Plaintiff did, in fact, file some administrative review documents at LCP concerning the claims in his complaint, but they argue that Plaintiff did not complete proper exhaustion of those claims.  (Doc. Nos. 29, 34, 40, 41.)

Under the PLRA, proper exhaustion "mean[s] 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" See Downey, 968 F.3d at 305 (quoting Woodford, 548 U.S. at 88).  And the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim  . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ).

A prisoner's failure to follow such procedural rules will result in a procedural default of the claims, thus barring the prisoner from bringing suit in federal court. See id. at 227-32; Scott v. CO Smoke, No. 19-cv-1387, 2019 WL 7163465, at *2 (M.D. Pa. Dec. 20, 2019) (stating that prisoners "who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court" (citing Spruill, 372 F.3d 218)).

With respect to the procedural rules that apply here, the Court observes that LCP has established a multi-tier administrative review process to address the concerns and issues encountered by the inmates while they are confined there.  (Doc.

11

No. 34-1.)[5] More specifically, this process requires inmates to follow a "Communication Continuum" in which "[a]n inmate is first required to attempt to resolve any concern or issue at the lowest level possible within the prison, unless there are compelling circumstances, before advancing to the next level." See id. at 2. This requires an inmate to first "attempt to reach an informal resolution with the housing unit officer and/or counselor, beginning first with face-to-face verbal communication and then, if necessary, through the use of the Inmate Request Form." See id. at 3.

If, however, "the inmate is not satisfied with the results of the informal resolution process, the inmate shall request to speak with a sergeant." See id. And, "[i]f the concern or issue is still unable to be resolved, the inmate may submit a written Inmate Grievance Form." See id. Once an inmate timely submits a written Inmate Grievance Form, it is processed by the grievance coordinator. See id. at 5. Particularly relevant here is that, "[i]f a formal grievance of a medical nature is filed, it shall be forwarded to the prison's chief medical officer for investigation and response." See id. at 6. If, however, "the chief medical officer is not the responding

---

[5] This process is set forth in LCP's Prison Policy & Procedure 03.03. (Doc. No. 34-1.) Specifically, it is set forth in the section pertaining to "Inmate Rules, Discipline and Rights[,]" and it falls under the chapter concerning "Inmate Grievance and Appeal Procedure. (Id.) For ease of reference, however, the Court will simply cite to the docket entry number that contains this chapter. (Id.)

employee, the chief medical officer shall review and initial the response prior to returning the grievance to the grievance coordinator." See id.

After an inmate has attempted "to resolve a grievance in accordance with the formal grievance process, an inmate may file an appeal through the grievance coordinator." See id. at 7. "Upon receipt of a timely filed grievance appeal, the grievance coordinator shall record the receipt of the grievance appeal in the offender management system. The grievance coordinator will then forward the grievance appeal to the Warden." See id. After the grievance appeal has been investigated and the required determinations have been made, "the Warden will prepare a written grievance appeal response containing the decision made and the reason(s) for the decision." See id. at 8.

In the instant matter, Defendants argue, essentially, that Plaintiff failed to properly complete LCP's administrative review process before filing his complaint in this Court. Initially, Defendants raised this exhaustion argument in the context of their motions to dismiss, which they filed pursuant to Rule 12(b)(6). (Doc. Nos. 16, 26.) Defendants argued, among other things, that LCP had "never" received any grievances concerning the claims that Plaintiff asserts in his complaint. (Doc. Nos. 22 at 5, 27 at 8.) Plaintiff, however, subsequently filed correspondence with the Court, attaching copies of administrative review documents that he had allegedly filed at LCP. (Doc. Nos. 23, 28.) Defendant Betti filed a reply brief asserting that,

upon further investigation, it was discovered that Plaintiff had, in fact, filed administrative review documents at LCP.  (Doc. No. 29.)

In connection with these various filings, the Court issued a <u>Paladino</u> Order on March 21, 2022, informing the parties that it would consider the issue of exhaustion in the context of summary judgment and that, by doing so, it would review matters outside the pleadings in its role as factfinder.[6]  (Doc. No. 32.)  The Court also afforded the parties an opportunity to be further heard on the issue of exhaustion. (<u>Id.</u>)  In accordance with that Order, the Medical Defendants filed a reply brief, addressing the documents that Plaintiff had filed with the Court. (Doc. No. 34.) Plaintiff, on the other hand, filed two (2) affidavits and copies of additional administrative review documents that he had allegedly filed at LCP (Doc. Nos. 37, 38).  Defendant Betti, in turn, filed a reply brief, and the Medical Defendants filed a response, again expanding on their exhaustion defense based upon what Plaintiff had submitted to the Court.  (Doc. Nos. 40, 41.)  Plaintiff then filed yet another declaration.  (Doc. No. 42.)

Suffice it to say, the parties' filings are disjointed, and the issue of exhaustion has not been neatly presented to the Court.  Nevertheless, the Court has, to the best of its ability, attempted to understand the parties' respective positions and the record

---

[6] <u>See</u> <u>Paladino</u>, 885 F.3d 203.

as it currently stands.  In conducting its review of the record, the Court observes that Plaintiff has filed various administrative review documents at LCP, both before and after he commenced this lawsuit.  The Court further observes that those various documents raise allegations, which concern the following four (4) categories: (1) Plaintiff's issues related to the handicap shower (Doc. Nos. 29-3 at 2-3, 37-1 at 8, 10-12, 35); (2) Plaintiff's issues related to his balance and walking (Doc. No. 38-1 at 15-16); (3) Plaintiff's issues related to his epilepsy and seizures (Doc. No. 37-1 at 2-7, 14-17); and (4) Plaintiff's request for a copy of an alleged incident report (Doc. No. 37-1 at 37, 39).  For the sake of creating a clear record, the Court addresses each of these categories, separately below.

### 1.    Handicap Shower[7]

The record reflects that on October 2, 2021, Plaintiff filed an inmate request asking that railings and a bench or chair be installed in the handicap shower in order to make it fully accessible to him.  (Doc. No. 29-2 at 2 (alleging that he has "unknown problems with balance" and would use the requested items to assist him with such problems).)  Warden Betti responded to this request on October 6, 2021, stating that a "[c]hair for showering is not unreasonable" and, thus, he represented

---

[7] Plaintiff's complaint raises allegations concerning the alleged inadequacy of the handicap shower at LCP.  (Doc. No. 1 at 5, 6.)

that he would forward the request "to the staff of Well[P]ath to see if they deem it necessary and/or reasonable." See id.

Two days later, on October 8, 2021, Plaintiff filed grievance no. 202111DD-009, again requesting that railings and a bench be installed in the handicap shower to make it fully accessible to him.  (Doc. No. 29-3 at 2.)  Caleen Orzel ("Orzel"), a non-party, responded to that grievance on November 1, 2021, stating that "[e]very housing unit has a handicap accessible shower" and that if Plaintiff felt that he was "in need of special accommodations" he was to "put in a sick call to be seen by medical."  (Id. at 3.)  Defendants argue that Plaintiff did not file any response and did not appeal this grievance.  (Doc. Nos. 29 at 4, 34 at 5.)  Thus, Defendants argue that Plaintiff did not properly complete the administrative review process at LCP. (Id. at 6.)

In an effort to rebut  Defendants' arguments, Plaintiff has submitted another inmate request, dated February 17, 2022, wherein he alleges that he "never got a response" for his appeal concerning grievance no. 202111DD-009. (Doc. No. 37-1 at 8.)  Attached to his inmate request is a grievance appeal form, which is dated November 12, 2021.  (Id. at 10.)  And, in that appeal form, Plaintiff identifies grievance no. 202111DD-009,[8] and he requests that a railing be installed in the

---

[8]  To be clear, Plaintiff identifies this grievance as "2021-1000-009." (Doc. No. 37-1 at 8, 10).  Because, however, Plaintiff explicitly references "the shower" in his

handicap shower in order to make it fully accessible to him.  (Id. at 10-12 (explaining that, although there is a plastic chair in the shower, it does not provide the stability he needs and, further, it is not ADA compliant).)  As reflected by that appeal form, however, it appears that either Plaintiff never submitted the appeal to prison staff or that prison staff never responded to the appeal once they received it.  (Id. at 10-11.)  Indeed, the sections on the form that are intended to be completed by prison staff are entirely blank.  (Id.)

As argued by the Medical Defendants, however, even if the Court were to assume that Plaintiff properly submitted this appeal form to prison staff, Plaintiff's appeal was filed after he had already brought suit in this Court.  Compare (Doc. No. 1 at 1 (containing the complaint which was received by the Court on November 1, 2021)) with  (Doc. No. 37-1 at 10-12 (containing the appeal form, which is dated November 12, 2021)).  The Court agrees.

As already discussed above, the PLRA's exhaustion requirement commands that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until** such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).  Thus, the exhaustion of

---

inmate request (id. at 8), the Court surmises that Plaintiff has incorrectly identified the grievance.

available administrative remedies at LCP was a prerequisite to Plaintiff bringing suit, here, in this Court.  See, e.g., Ross, 578 U.S. at 638; Jones, 549 U.S. at 211; Booth, 532 U.S. at 733-34.

The Court finds that requiring Plaintiff to complete exhaustion at LCP before bringing suit in this Court advances the policy justifications of the PLRA—that is, to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added)); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

Thus, in light of these governing principles, Plaintiff's attempt to file an appeal of grievance no. 202111DD-009 **after** he had already commenced this suit, does not satisfy the PLRA's exhaustion requirement.  See Ahmed v. Dragovich, 297 F.3d 201, 209 n.9 (3d Cir. 2002) ("'Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit.'" (quoting Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534-35 (7th Cir.1999)) (emphasis in original)); Garrett v. Wexford Health, 938

F.3d 69, 85-86 (3d Cir. 2019) (observing that substantial compliance with the PLRA's exhaustion requirement does not encompass "the filing of a suit before administrative exhaustion . . ." (citing Ahmed, 297 F.3d at 209)).

Accordingly, the Court finds that, with respect to grievance no. 202111DD-009, Plaintiff did not complete LCP's administrative review process before haling Defendants into federal court and, as a result, Plaintiff has procedurally defaulted his claims concerning the handicap shower at LCP.  This procedural default may be excused, however, if Plaintiff can show that the administrative remedies at LCP were unavailable to him.  See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Downey, 968 F.3d at 305 (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

In considering whether this procedural default should be excused, the Court is mindful of the basic principle that, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  See Rinaldi, 904 F.3d at 268

(citation and internal citation omitted).  In other words, Plaintiff is the one who shoulders the burden of establishing that administrative remedies were unavailable to him at LCP.

Here, Plaintiff makes no argument that his failure to complete LCP's administrative review process **<u>before</u>** commencing this lawsuit was the result of administrative remedies being unavailable to him.  Rather, Plaintiff seems to argue that he was able to file an appeal at LCP for grievance no. 202111DD-009, but that Defendants never responded to that appeal.  Even if, however, the Court were to accept as true the fact that Plaintiff had properly filed that appeal and the fact that Defendants did not comply with their own procedures by failing to respond to that appeal, the Court would still find that Plaintiff did not attempt to complete the administrative review process at LCP prior to commencing suit in this Court.  And that is because Plaintiff did not file his appeal until eleven (11) days after he had already brought suit.  <u>Compare</u> (Doc. No. 1 at 1 (containing the complaint which was received by the Court on November 1, 2021)) <u>with</u> (Doc. No. 37-1 at 10-12 (containing the appeal form, which is dated November 12, 2021)).

Accordingly, for all of these reasons, the Court concludes that Plaintiff has provided no basis to excuse his failure to exhaust available administrative remedies with respect to his claims concerning the handicap shower at LCP, which, as

20

discussed above, were asserted in grievance no. 202111DD-009.  As a result, the Court will grant summary judgment in favor of Defendants on this basis.

2.    **Balance and Walking**[9]

On October 3, 2021, Plaintiff filed grievance no. 202111DD-001, complaining that he was having difficulty walking and that, although he had "seen different people[,]" no one has had an answer for him about why his walking is "getting bad." (Doc. No. 23 at 3.)  As argued by the Medical Defendants, however, Plaintiff did not submit an inmate request before filing this grievance.  (Doc. No. 34 at 6.)  Thus, the Medical Defendants argue that, because Plaintiff did not first submit an inmate request, he was not permitted to file grievance no. 202111DD-001 pursuant to LCP's policy and procedures.   (Id.)

The Court, however, is not moved by this argument.[10]  While LCP's administrative review process certainly required Plaintiff to file an inmate request before filing a grievance, the record reflects that prison staff responded to the merits of grievance no. 202111DD-001.  More specifically, the record reflects that, on November 3, 2021, Orzel "[f]orwarded grievance to Well[P]ath for answer." (Doc.

_____

[9]  Plaintiff's complaint raises allegations concerning issues related to his balance and walking.  (Doc. No. 1 at 4, 6.)

[10]  This is the only argument that the Medical Defendants have raised concerning Plaintiff's alleged failure to exhaust his claims concerning issues related to his balance and walking.  (Doc. No. 34 at 6-7.)

No. 23 at 4.)  Thus, the Court finds that Defendants waived this particular exhaustion defense when Orzel addressed Plaintiff's grievance on the merits, even though that grievance could have been denied on a valid procedural ground pursuant to LCP policy and procedures.  See Rinaldi, 904 F.3d at 272 (concluding that a "merits review satisfies exhaustion under the PLRA and that, because PLRA exhaustion turns on the remedies and grievance procedures that the particular prison has available, treating a claim as exhausted where a prison chooses not to enforce those procedures does not contravene the PLRA" (collecting cases from sister Courts of Appeals)).

Accordingly, the Court finds that the Medical Defendants have not met their burden of proof in establishing that Plaintiff failed to exhaust his claims concerning his issues with balance and walking.  See Paladino, 885 F.3d at 207 (stating that a "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove . . .").  Thus, the Court will deny the Medical Defendants' motion for summary judgment on this basis.

### 3.   Epilepsy and Seizures

Plaintiff has filed several administrative review documents concerning his alleged epilepsy and seizure medication.  Some of those documents were filed before he commenced suit in this Court (Doc. No. 37-1 at 2-3, 4-5), and others were filed after he had already commenced suit (id. at 6-7, 14-16, 17).  Regardless, however,

the Court observes that Plaintiff's complaint raises no allegations concerning his alleged epilepsy or seizure medication.  (Doc. No. 1.)  As a result, the Court finds that it is irrelevant whether Plaintiff properly exhausted available administrative remedies with respect to allegations that were only raised in administrative review documents at LCP, and not asserted in the complaint filed with this Court.

### 4.    Incident Report

Plaintiff has also filed administrative review documents concerning his request for a copy of a report that discusses an incident, which allegedly occurred on December 19, 2021.  As before, some of those documents were filed before he commenced suit in this Court (Doc. No. 37-1 at 37), and others were filed after he had already commenced suit (id. at 39; Doc. No. 28 at 2-3).  However, Plaintiff's requests seeking a copy of an alleged incident report do not, in themselves, form the basis of any Section 1983 claim or ADA claim that Plaintiff has asserted in the complaint.  Rather, Plaintiff's requests appear to be seeking discovery for the purpose of litigating this action.  As such, the Court finds that any administrative review documents concerning his request for such discovery is not relevant to the issue of whether Plaintiff has satisfied the PLRA's exhaustion requirement.

### 5.    Plaintiff's Other Claims

The Court can now address the Medical Defendants' final exhaustion argument—that the summary judgment record establishes that Plaintiff "has not even attempted to begin exhausting his administrative remedies as to his claims regarding his dental and/or mental health treatment." (Doc. No. 34 at 7.)  The Court agrees.  Based upon the summary judgment record that is before the Court, Plaintiff neither sought informal  resolution by filing an inmate request nor formal resolution by filing a grievance and, if necessary, an appeal of that grievance concerning his claims of inadequate dental and mental health treatment at LCP.  Because Plaintiff failed to do so, he did not comply with LCP's administrative review process in accordance with its policy and procedures and, thus, he did not complete proper exhaustion before filing suit in this Court.  See Downey, 968 F.3d at 305; Jones, 549 U.S. at 218.  Consequently, the Court finds that Plaintiff has procedurally defaulted his claims concerning inadequate dental and mental health treatment at LCP.

As discussed above, however, this procedural default may be excused if Plaintiff can show that the administrative remedies at LCP were unavailable to him. The Court, having reviewed Plaintiff's various filings in this action, finds that he has not presented any argument or evidence that his failure to exhaust his claims concerning inadequate dental and mental health treatment before commencing this lawsuit was the result of administrative remedies being unavailable to him.

Accordingly, for all of these reasons, the Court finds that Plaintiff has provided no basis to excuse his failure to exhaust these claims. As such, the Court will grant summary judgment in favor of the Medical Defendants on this basis.

## B. Defendants' Motions to Dismiss

Given the Court's conclusions above, there is no procedural bar to Plaintiff proceeding in this action on his Section 1983 and ADA claims concerning Defendants' treatment of his issues with balance and walking. Because, however, Defendants have also sought dismissal of Plaintiff's complaint on the basis that it fails to state a claim upon which relief can be granted, the Court will address the plausibility of these claims below.

### 1. Defendant Betti's Motion to Dismiss

Defendant Betti argues that the only claim Plaintiff has asserted against him is an ADA claim regarding his alleged failure to make proper modifications to the shower to suit Plaintiff's needs. (Doc. No. 22 at 6-7.) The Court agrees. The only factual allegations that have been asserted against Defendant Betti are as follows:

> As time went on my abblity [sic] to function got harder. It became almost imposable [sic] to shower offten [sic]. On my cell block there is [sic] 2 handycapped [sic] cells but no handycapped [sic] shower. Violating my rights under the A.D.A.-Americans with Disabilities Rights Act. I asked [Defendant] Betti "warden" if he could make the modifattions [sic] I require[,] a simple rail and a bench[, and] he said he would contact [W]ellpath to see if they deem it necessary. Well[P]ath knowing a brief medical history are familure [sic] with my balance & walking problems but still no modifacations [sic]. So

> I contacted the D.O.J. Department of Justice – Disabilities Rights
> Section.

(Doc. No. 1 at 5.)

The Court liberally construes Plaintiff's allegations against Defendant Betti as asserting an ADA claim on the basis that he failed to make accommodations to the shower which would suit Plaintiff's needs.  As discussed at length above, however, Plaintiff procedurally defaulted his claim concerning the alleged failure to make modifications to the handicap shower.  Thus, because this is the only claim that Plaintiff has asserted against Defendant Betti in the complaint, the Court will dismiss Defendant Betti as a defendant from this action.

### 2.   Medical Defendants' Motion to Dismiss

#### a.   Plaintiff's ADA Claim

The Medical Defendants argue that Plaintiff's ADA claim concerning their alleged failure to provide proper medical care for Plaintiff's balance and standing issues is not cognizable against them because they are not proper defendants for a private cause of action under Title II of the ADA.  (Doc. No. 27 at 11.)  As such, the Medical Defendants contend that they should be dismissed from this action.  (Id.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132.  Thus, in order "[t]o

26

successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'"   See Haberle v. Troxell, 885 F.3d 170, 178-79 (3d Cir. 2018) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

Particularly relevant here is the third element—whether Plaintiff has alleged that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity.  Title II of the ADA defines "public entity" as follows: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority[.]"  See 42 U.S.C. § 12131(1).

While a state prison falls within the statutory definition of a "public entity" as understood by Title II of the ADA, see Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998), a private corporation contracting with that prison does not. See Matthews v. Pennsylvania Dep't of Corr., 613 F. App'x 163, 170 (3d Cir. 2015)

(unpublished)[11] (concluding, that for purposes of the ADA, "a private corporation is not a public entity merely because it contracts with a public entity to provide some service" (citation and internal quotation marks omitted)).

Additionally, an individual defendant, who is sued in his or her individual capacity, is not a "public entity" under Title II of the ADA.  See Bowens v. Wetzel, 674 F. App'x 133, 136 (3d Cir. 2017) (unpublished) (affirming district court's dismissal of plaintiff's claim brought under Title II of the ADA, where plaintiff's amended complaint "sued state employees in their individual capacities" and "not any 'public entity' as the statute requires" (quoting 42 U.S.C. § 12132); Matthews, 613 F. App'x at 170 (finding that "Title II of the ADA does not provide for suits against state officers in their individual capacities").

Applying these principles here, the Court finds that Plaintiff's ADA claims against the Medical Defendants fail to state a claim upon which relief can be granted. The individual Medical Defendants—i.e., Defendants Demian, Mallik, and Ahmed—do not constitute public entities within the meaning of Title II of the ADA

---

[11]  Throughout this decision, the Court has cited to some non-precedential opinions ("NPOs") from the United States Court of Appeals for the Third Circuit.  The Court notes that these NPOs contain persuasive reasoning for the issues here and, thus, they have been used as a paradigm of legal analysis.  See New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (observing that an NPO "is only as persuasive as its reasoning"); Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996) (looking to a factually similar NPO "as a paradigm of the legal analysis").

and, thus, are not subject to suit.  Additionally, WellPath, the private corporation

providing medical services to the inmates incarcerated at LCP, also does not

constitute a public entity, even if WellPath contracts with the prison to provide such

services.  See generally City & Cnty. of San Francisco, Calif. v. Sheehan, 575 U.S.

600, 610 (2015) (explaining that "[o]nly public entities are subject to Title II" of the

ADA).  Accordingly, for all of these reasons, the Court will grant the Medical

Defendants' motion to dismiss to the extent that they argue that Plaintiff's complaint

fails to state an ADA claim upon which relief can be granted.

### b.    Plaintiff's Section 1983 Claim

In addition to the ADA claim, Plaintiff's complaint also asserts a claim under

Section 1983, alleging violations of the Eighth Amendment's Cruel and Unusual

Punishments Clause based upon allegations that he received inadequate medical care

for issues related to his balance and walking.  (Doc. No. 1 at 6.)  Although the

Medical Defendants have not addressed this claim in their motion or briefing, the

Court has a continuing statutory obligation to conduct review of pro se complaints

brought by plaintiffs granted leave to proceed in forma pauperis.  See 28 U.S.C. §

1915(e)(2)(B).  Thus, in accordance with that obligation, the Court conducts this

review.

At the time Plaintiff commenced this action, he was, allegedly, a pre-trial

detainee at LCP.  (Doc. No. 1 at 2 (marking the portion of his form complaint that

29

indicates he is a "[p]retrial detainee").)[12]  A pretrial detainee's claim of inadequate

medical care, like Plaintiff's, arises under the Fourteenth Amendment, rather than

the Eighth Amendment.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575,

581 (3d Cir. 2003).  Nevertheless, the United States Supreme Court has held that the

Fourteenth Amendment affords protections to pre-trial detainees that are "at least as

great" as those afforded to convicted prisoners under the Eighth Amendment.  See

id. (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).

Thus, in the context of claims for inadequate medical care, the United States

Court of Appeals for the Third Circuit Court has "found no reason to apply a

different standard than that set forth in Estelle [v. Gamble, 429 U.S. 97 (1976)]

(pertaining to prisoners' claims of inadequate medical care under the Eighth

Amendment) when evaluating whether a claim for inadequate medical care by a pre-

trial detainee is sufficient under the Fourteenth Amendment."  See id.  As such, the

Court will analyze Plaintiff's claim for inadequate medical care, i.e., the failure to

address issues related to his balance and walking, under the framework of the Eighth

Amendment.  See id. at 582 (evaluating the pre-trial detainee's "Fourteenth

---

[12]  In his form complaint, Plaintiff marks that he is a pre-trial detainee.  (Doc. No. 1 at 2.)  Plaintiff also marks, however, that he is a "[c]onvicted and sentenced state prisoner."  (Id. at 2.)  The Court surmises that this pertains to a prior conviction and sentence.

Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment . . ." (citation omitted)).

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"[T]he concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences." See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The United States Court of

Appeals for the Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

Here, Plaintiff's complaint raises the following factual allegations concerning issues with his balance and walking:

> After seeing Dr. Amed [sic] about my balance and walking[,] he told me that it's probably Vitamin D or Vitamin B [d]eficiancy [sic] but did no tests. As time went on it became harder to do simple things like walk and carry a tray to my cell.

(Doc. No. 1 at 4.)

Thus, to the extent that Plaintiff's complaint can be construed as asserting a failure to provide medical care under the Fourteenth Amendment, based upon allegations concerning issues with his balance and walking, the Court treats his Fourteenth Amendment claim as being asserted against Defendant Ahmed. And, in reviewing this claim against Defendant Ahmed, the Court concludes that, even if it were assumed that the complaint has alleged a serious medical need concerning Plaintiff's issues with balance and walking, the Court would still find that the complaint has not plausibly alleged that Defendant Ahmed was deliberately indifferent to that need. In other words, the complaint does not allege that Defendant Ahmed not only knew of an excessive risk to Plaintiff's health or safety but that he

disregarded that risk.  Accordingly, because Plaintiff has not sufficiently shown that Defendant Ahmed acted with deliberate indifference to an alleged serious medical need, the Court will dismiss Plaintiff's Fourteenth Amendment claim against Defendant Ahmed for failure to state a claim upon which relief can be granted.

### C.     Leave to Amend

The only remaining issue is, therefore, whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim

upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend would be futile as to his Fourteenth Amendment claim against the Medical Defendants for failure to provide adequate medical care with respect to Plaintiff's issues with balance and walking and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

However, with respect to Plaintiff's ADA claim against the Medical Defendants, the Court finds that granting Plaintiff any further leave to amend this claim would be futile, as the Medical Defendants are not subject to suit under Title II of the ADA. Accordingly, Plaintiff's ADA claim against the Medical Defendants will be dismissed from this action with prejudice.

## IV.    CONCLUSION

To conclude, the Court will grant Defendant Betti's motion, and the Court will grant in part and deny in part the Medical Defendants' motion.  In addition, the Court will grant Plaintiff leave to file an amended complaint with respect to his Fourteenth Amendment claim against the Medical Defendants concerning his issues with balance and walking.  An appropriate Order follows.

<u>s/Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated:        August 19, 2022